**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

**16 Cr 397 (LTS)**

**v.**

**RENEWED**
**MOTION TO REDUCE SENTENCE**
**HAROLD HILL,**                                 **PURSUANT TO**
**18 U.S.C. § 3582(c)(1)(A)(i)**

**Defendant.**

**(COMPASSIONATE RELEASE)**

_____

### Introduction

The defendant, Harold Hill, Id. No. 91134-054 through his attorney, respectfully provides

supplemental information to renew his motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to reduce

his sentence to time served and for immediate release followed by five years of supervised release

including those special conditions initially imposed[1] based on the likelihood, given his chronic

underlying medical conditions, that exposure to severe acute respiratory syndrome coronavirus

2019 (hereinafter "coronavirus") and its resulting disease, COVID-19, will cause his serious illness

and/or death and given his projected March 2, 2021 early release to community supervision in less

than three months the FBOP finds that Harold Hill no longer poses any danger to the community.

---

[1] Mr. Hill is prepared to spend at a minimum the initial 14 days at home in self-quarantine whether by Order of this Court or of his own accord.  His release plan was detailed more fully in his prior application (Dckt No. 382) which outlined the living quarters at his mother's home which will enable him to fully quarantine, with his own bathroom and bedroom, for at least 14 days for his safety and the safety of the community in North Carolina, far away from the congested Lincoln House projects or prison.

1

Two pivotal factors have changed since the Court considered Hill's compassionate release application last April.  Since the Court initially denied Hill's motion for Compassionate Release on May 26, 2020, the circumstances in which Hill is confined have worsened dramatically inasmuch as the infection rate at Terre Haute where he is confined has skyrocketed and the FBOP has found Hill suitable for safe return to community supervision in less than three months. (ECF Dkt No.  383) .  With the rise of COVID-19 infection rate in Terre Haute, particularly in the past 45 days, the risk to Mr. Hill's health concomitantly has likewise increased substantially.  Since his application to this Court Mr. Hill has been assigned a release date into the community in March 2, 2021 reflecting a change in circumstances underscoring that he is rehabilitated enough to be safely reintegrated into the community with supervision in less than three months.  Nevertheless, the risks of COVID-19 are so substantial to his life and limb that an earlier release date is warranted.  Surely Mr. Hill's application now raises an extraordinary and compelling concern that his chronic COPD, treated by daily use of multiple inhalers, among other health challenges puts him at far higher risk of serious illness or death should he contract the disease. [2]

As amended by the First Step Act, the compassionate release statute allows courts to reduce sentences for "extraordinary and compelling" reasons.  COVID-19 is a serious respiratory

---

[2] On February 2, 2018 Harold Hill, who is now 47 years old, was sentenced to 84 months in prison upon his plea of guilty to Conspiracy to Distribute Crack Cocaine 18 U.S.C. 846, 841(b)(1)(b).  Harold Hill has been in custody in connection with the present offenses since September 8, 2016 which amounts **to more than 50 months** of actual incarceration.  Upon information and belief, he has fully completed the R.D.A.P. program at Fort Dix and in March 2020 he completed the "After Care" portion of the R.D.A.P. program which now entitles him to a reduction in his overall sentence.

disease that is highly contagious, and which can lead to death.  United States Centers for Disease
Control and Prevention, Coronavirus Disease 2019 (COVID-19): Situation Summary, CDC,
(2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html(hereinafter).
The growing coronavirus pandemic,[3] which public health experts and policymakers recognize is
especially dangerous in the confines of correctional institutions, is such an extraordinary and
compelling circumstance.  *United States v. Brooker*, No. 19-3218-CR, __ F.3d __ 2020 WL
5739712 at *7 (2d Cir. Sept 25, 2020) (holding that "the First Step Act freed district courts to
consider the full slate of extraordinary and compelling reasons that imprisoned person might
bring before them in motions for compassionate release.").

## Argument

Since his application in May 2020 when the Court observed "up until days ago, Terre
Haute had no cases," (Decision at p 3) hundreds of inmates at Terre Haute have contracted the
disease; at least two have died and presently 155 inmates are infected as well as 17 staff.  *See*,
https://www.bop.gov/coronavirus/ (last visited December 12, 2020).  Clearly, even assuming the
FBOP and this particular facility's best efforts this virus is extremely difficult to contain and
treat.  On May 19, 2020, by supplemental letter counsel reported to this Court that local Indiana
newspapers were reported the first infections in Terre Haute, although the FBOP had not yet
reported any. (*See*, Dkt No. 386 *citing* Tribune Star, May 19, 2020, *Case of COVID-19 Infection*

---

[3] Bobby Allyn, *Fauci Estimates That 100,000 To 200,000 Americans Could Die From The Coronavirus*,
National Public Radio (Mar. 29, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/03/29/823517467/fauci-estimates-that-100-000-to-200-000-americans-could-die-from-thecoronavirus.

*Reported at Federal Prison in Terre Haute*, by Lisa Trigg ("On Saturday morning, members of prison workers union AFGE Local 720 were notified that one inmate had tested positive for COVID-19 and that two staff had been exposed to the virus.")

https://www.tribstar.com/news/case-of-covid-19-infection-reported-at-federal-prison-in-terre-haute/article_85a075ee-9940-11ea-87fe-fb3a2398734d.html; *see also*, Union *COVID-10 Case at Terre Haute Federal Prison*, AP Press, May 18, 2020 at 9:28 pm.

https://www.wane.com/news/indiana/union-inmate-covid-19-case-at-terre-haute-federal-prison/; *see also*, Dubois County Herald, *Inmate Has COVID-19 at Terre Haute*, AP Press, May 19, 2020  https://duboiscountyherald.com/b/inmate-has-covid-19-at-terre-haute-federal-prison.

Today, Terre Haute reports 155 cases among inmates and has the twelfth highest infection rate of all FBOP facilities on the official web site. https://www.bop.gov/coronavirus/ (last visited December 12, 2020). Because of Harold Hill's Chronic Pulmonary Obstructive Disorder (COPD) and chronic and severe asthma he has suffered since childhood,[4] his history of

---

[4] The CDC has consistently reported that "People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19." https:/cdc.gov/coronavirus/2019-ncov/nee-extra-precautions/asthma.html  *People with Moderate to Severe Asthma*, Ctr. for Disease Control (Mar. 17, 2020), *available at* https://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/asthma.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fasthma.html; *see also*, Garg S, Kim L, Whitaker M, et al. Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019 — COVID-NET, 14 States, March 1–30, 2020. MMWR Morb Mortal Wkly Rep 2020; 69:458–464. DOI: http://dx.doi.org/10.15585/mmwr.mm6915e3external icon; ("Among 178 (12%) adult patients with data on underlying conditions as of March 30, 2020, 89.3% had one or more underlying conditions; the most common were hypertension (49.7%), obesity (48.3%), **chronic lung disease (34.6%)**, diabetes mellitus (28.3%), and cardiovascular disease (27.8%)." (emphasis added)).

hospitalizations and intubations as a result as recently as 2015 in Lincoln Hospital,[5] Hill is among those at highest risk of death or serious illness if he is exposed and contracts the disease. This risk – which is greater within the confines of the close quarters in a prison - combined with the totality of the circumstances of an unprecedented modern pandemic, warrants an immediate sentence reduction to time served. [6]

To recapitulate from the initial applicaitons, Mr. Hill uses three inhalers, a nebulizer and is prescribed oral steroids to treat and control his lung disease in prison.[7] *See*, Renewed Motion

---

[5] Harold Hill's 2015 Lincoln Hospital Medical records which reflect his history of chronic asthma and his repeated hospitalizations, including a prior intubation, are on file with defense counsel, were raised at the time of his sentencing and remain available for this Court's review.  They are not attached as an exhibit although cited in the original application throughout, were made available to the Government and filed with the Court under seal.  This is also true of Mr. Hill's voluminous FBOP medical records reflecting the multiple medications and treatments for his COPD and asthma in prison.  Should the Court wish to review the originals, defense counsel will forward electronic versions of these voluminous documents.

[6]  The New England Journal of Medicine published an April 2, 2020 article identifying the crisis but also urging early and immediate mitigation intervention to slow the spread of the virus to the prison population, before it spreads out of control. "An operationalize a response for incarcerated populations, three levels of preparedness need to be addressed: the virus should be delayed as much as possible from entering correctional settings; if it is already in circulation, it should be controlled; and jails and prisons should prepare to deal with a high burden of disease. The better the mitigation job done by legal, public health, and correctional health partnerships, the lighter the burden correctional facilities and their surrounding communities will bear." https://www.nejm.org/doi/full/10.1056/NEJMp2005687?query=RP    This article notes that reducing the prison population by releasing certain inmates will contribute to "flattening the curve" by limiting "transmission both inside correctional facilities and in the community after incarcerated people are released. Such measures will also reduce the burden on the correctional system in terms of stabilizing and transferring critically ill patients, as well as the burden on the community health care system to which such patients will be sent." *Id*.

[7] Counsel's review of the medical records corroborates the extent of Hill's condition reflected in the multiple medications he receives to manage his condition three inhalers and a steroid for his lungs:

for CR May 6, 2020 (ECF Dkt No. 383).[8]  Since November 2020, Mr. Hill reports through

communications with his mother that ten inmates in his bunk-bed dorm where social distancing

is impossible, have contracted the virus and Correction Officers are infected and reluctant to

enter the dorms.  He also reports that the teacher, the commissary Correction Officer and a mess

hall Correction Officer have contracted the virus.  Hill has remained on lockdown and meals

currently are limited to peanut butter and jelly sandwiches at a minimum of twice and sometimes

as much as three times daily.  Without commissary, he along with other inmates cannot purchase

---

| | |
|---|---|
| Albuterol Inhaler | (2 puffs four times per day) |
| Budsonide/Formotrerol | (2 puffs two times per day) |
| Montelukast Sodium | (10 mg 1 per day) |
| Tiotroipum Bromide | (w/inhalers once daily through Handihaler) |

(FBOP records @ p 118)

[8] As noted in the original sentencing memo to this Court, "Harold Hill suffers from extreme and chronic asthma.  His wheezing is audible and his shortness of breath palpable when he speaks even when his asthma is controlled.  Harold uses four separate inhalers, takes albuterol and steroids and also has access to oxygen machines for episodic flare-ups in the dry air at the MDC.  Harold was twice hospitalized and intubated for life-threatening asthma attacks including one which lasted four days in the intensive care unit at Lincoln Hospital." (Dkt No. 306, February 2, 2018 (Defense Sentencing Memo).  As a chronic asthma sufferer, he is among those with the highest risk of death or serious illness from COVID-19. There is no question that the COVID-19 virus is a **respiratory disease** and complications include pneumonia, organ failure and may result in death. <u>What you need to know about coronavirus disease 2019 (COVID-19)</u>, CDC (Mar. 20, 2020), at <u>https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf</u>.   By now every credible news outlet in the world has reported, this is first and foremost a disease of the lungs. *See e.g.*: <u>What does the coronavirus do to your body? Everything to know about the infection process</u>, USA Today (Mar. 16, 2020), at <u>https://www.usatoday.com/in-depth/news/2020/03/13/what-coronavirus-does-body-covid-19-infection-process-symptoms/5009057002/</u>. ("**The lungs are the major target,**" Dr. Martin Hirsch, Senior Physician, Infections Diseases, Mass. General Hospital) (emphasis supplied).

anything, including importantly hand soap necessary to manage the contagion.  Despite attempts to isolate the inmates and control the spread, the infection rate has climbed rapidly.[9]

**Hill's Plan to Ensure his Safe, Healthy Transition to the Community**

Months ago, last Spring, when this Court declined to grant relief one of the Court's concerns was the safety of the community and Mr. Hill's safe and rehabilitative transition back to the law abiding society given his acknowledged guilt to this crime and his criminal history.  Since that time, not only has Hill suffered an additional six months of incarceration as punishment, but he has also been assigned an early community release date of March 2, 2021.  During these past six months Hill has suffered not only additional punishment, but  he has done so under what can only be described as psychologically and emotionally terrifying conditions.  The coronavirus has elevated the nation's anxiety and for those in prison with little ability to protect themselves from infection, who are on continual lockdowns with minimal access to reliable information from the outside the psychological toll is nothing short of terrifying. [10] While Mr. Hill has less than three months to serve before he is released to community supervision this Court should note that

---

[9] In 2018, Hills breathing disability was so palpable even to a lay person, defense counsel advocated for a reduced sentence based in part on that very disability, (February 1, 2018, Sentencing Trx. at p. 20) ("He has a serious asthma problem, Your Honor, and at 45, he can't afford to be intubated again and again for his lungs and the asthma he developed as a kid in the projects.")  Counsel also made mention of his audible wheezing in the written submission. (Jan. 18, 2018 Def.  Memo at p 5).  Defense counsel was not the first and clearly not the most recent to have noted this chronic condition from which Hill suffers.  His medical records from 2015 until 2020 are plastered with references concerning audible wheezing, chronic, sometimes near fatal bouts of lung disease, terrifying shortness of breath and constant medical intervention

[10] Per the initial defense sentencing memorandum and subsequent memoranda for compassionate release, the Court is reminded that Harold Hills suffers from medically diagnosed PTSD.

currently there is absolutely no opportunity inside the prison for additional rehabilitative education, reintegration preparation or self-betterment due to the prison lockdowns and the minimal personnel movement inside the facility to attempt to curtail the spread of the virus.   It is highly unlikely that any will be restored before March 2, 2021.  Accordingly, due to the lockdowns there is little more Hill has to gain in terms of rehabilitation by additional confinement three more months except pure retributive punishment and he has everything to lose in terms of the risk to his life.

Harold's mother, Renee Hill, who spoke to her son regularly before he was subjected to even further restrictions since the severe uptick in infections remains prepared to travel directly to Indiana by car to pick up her son with her thirty-year-old grandson.  It is just over 11 hours one way by car from her home to Terra Haute, Indiana.  She owns a 2017 Nissan which is able to make the roundtrip.  Renee Hill has a modest home in Parkton, North Carolina on Mount Baldy Drive. She is in good health herself, able to make the roundtrip to Indiana, isolate her son in the backseat to protect them both until they are home and quarantined.

In Parkton, North Carolina Ms. Hill has a separate bedroom and a separate bathroom on the opposite side of her home away from her bedroom and bathroom which is available exclusively for Harold Hill to use where he can be completely quarantined for 14 days once he arrives.  Only Renee and Harold Hill will live there.  She has the income and the space to support him, Harold Hill is Medicaid eligible for continuing care of his asthmatic condition, as well as his COPD. Following quarantine and hopefully the passage of this epidemic, Harold's consistent work as an orderly demonstrates that he has the self-discipline to apply himself to earn a modest wage and support himself while living in his mother's home.

**Conclusion**

For the foregoing reasons, Harold Hill respectfully requests that the Court grant reduction in sentence to time served, direct his immediate release to the quarantine of his mother's home in North Carolina to complete the supervised release portion of his sentence so he can end the terror of further imprisonment during this crisis and slowly reintegrate into a changed society, a repentant man rightfully frightened for his life.

December 12, 2020                              Respectfully submitted,


                                               */s/ Susan J. Walsh*

                                               Susan J. Walsh
                                               Attorney for Defendant

9