UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA

    -v-                                    No.  16-CR-397-LTS

HAROLD HILL,

       Defendant.

--------------------------------------------------------x

MEMORANDUM ORDER

         The Court has received Defendant Harold Hill's renewed motion for a reduction in sentence pursuant to 18 U.S.C. section 3582(c)(1)(A).  (Docket Entry No. 410 ("Motion").)  The Court denied Mr. Hill's first motion for compassionate release because he had not exhausted his administrative remedies as required by 18 U.S.C. section 3582(c)(1)(A) (Docket Entry No. 381), and his second because he had not shown that extraordinary and compelling circumstances warranted a reduction of his sentence at the time.  (Docket Entry No. 388 (the "May 26 Mem. Ord.").)

         Mr. Hill, who is 47 years old and has been approved for release to a residential reentry center ("RRC") on March 2, 2021, again seeks immediate release to supervised release, claiming that his respiratory conditions of asthma and severe chronic obstructive pulmonary disease ("COPD") place him at greater risk of suffering severe manifestations of COVID-19, and, together with his imprisonment at FCI Terre Haute—where there is an ongoing outbreak of COVID-19—constitute "extraordinary and compelling" reasons warranting a reduction in his sentence.  (Motion at 1-8.)  On December 23, 2020, the Government filed its opposition to Mr. Hill's motion.  (Docket Entry No. 413 ("Opp.").)  On December 28, 2020, Mr. Hill filed a reply.  (Docket Entry No. 415 ("Reply").)

The Court has considered carefully all of the parties' submissions and arguments and, for the following reasons, grants Mr. Hill's motion for compassionate release.

DISCUSSION

Mr. Hill seeks an order directing his compassionate release under 18 U.S.C. section 3582(c)(1)(A), which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 116-223).[1]  The Court therefore considers "the factors set forth in section 3553(a) to the extent that they are applicable," and then considers, in light of those factors, whether the defendant's proffered "extraordinary and compelling reasons" for a sentence reduction warrant a reduction in the defendant's sentence. The Court may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release" in determining whether those reasons warrant a sentence reduction.  United States v. Brooker, 976 F.3d 228 (2d Cir. 2020).[2]  "The defendant has the burden to show that he is entitled to a sentence reduction"

---

[1]  The Government does not dispute that Mr. Hill has satisfied section 3582(c)(1)(A)'s exhaustion requirement.  (See Opp. at 5.)

[2]  In Brooker, the Second Circuit clarified that district courts are bound neither by U.S.S.G. section 1B1.13's enumeration of extraordinary and compelling circumstances, nor by that section's "freestanding requirement that the defendant seeking release not pose any danger to the community."  United States v. Kornegay, No. 13-CR-428 (PAE), 2020 WL 7079412, at *3 (S.D.N.Y. Dec. 3, 2020) (citing Brooker, 976 F.3d at 237).  The Court's

under section 3582(c)(1)(A).  <u>United States v. Ebbers</u>, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

 The Court's original consideration of the section 3553(a) factors is reflected in the transcript of Mr. Hill's sentencing hearing on February 1, 2018.  (Docket Entry No. 318 ("Sentc. Tr.").)[3]  As to the nature and circumstances of the offense, the Court noted that Mr. Hill committed a serious crime by selling large quantities of crack cocaine, over an extended period, in his own community, in which he was a third-generation resident.  (<u>Id.</u> at 33-34.)  The Court also considered, however, that "the conduct in which Mr. Hill made his dangerous choices . . . was conduct that was endemic in the community."  (<u>Id.</u> at 38.)  In light of those factors, as well as Mr. Hill's difficult youth, his post-arrest rehabilitation efforts and good works, the support of his family members, his "serious health challenges," and other factors stated on the record, the Court found that a downward variance from the applicable guidelines range was necessary to achieve a sentence that was reasonable, appropriate, sufficient and no greater than necessary to address the statutory purposes of sentencing.  (<u>Id.</u> at 34-38.)  Accordingly, the Court sentenced

---

May 26 decision denying Mr. Hill's second motion for compassionate release, which relied in part on U.S.S.G. section 1B1.13, was decided before <u>Brooker</u>.

[3] The sentencing factors set forth in 18 U.S.C. section 3553(a) are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ; (5) any pertinent policy statement [issued by the Sentencing Commission in effect on the date the defendant is sentenced]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."  18 U.S.C.A. § 3553(a) (Westlaw through P.L. 116-223).

Mr. Hill to 84 months of incarceration, as well as a five-year term of supervised release.  (Id. at 39.)

  In the approximately 35 months since his sentencing, Mr. Hill has completed the BOP's Residential Drug Abuse Program and has continued to serve in the honorable position of an orderly while incarcerated.  (Docket Entry No. 382 at 5; Opp. Ex. A.)  He has been approved by the BOP for release to an RRC on March 2, 2021, and is scheduled for release from BOP custody altogether on August 26, 2021.  (Motion at 2; Opp. at 7; BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited December 29, 2020).)  On November 2, 2020, the BOP designated Mr. Hill as having a "low risk recidivism level."  (Opp. Ex. A at 1.)  The Court considers these developments, as well as those reviewed on the record at Mr. Hill's sentencing, in its evaluation of the section 3553(a) factors.[4]

  With these section 3553(a) factors in mind, the Court next considers whether Mr. Hill's proffered extraordinary and compelling reasons—his respiratory health conditions and the spread of COVID-19 at FCI Terre Haute—warrant a reduction in Mr. Hill's sentence to time served.  Mr. Hill, who is 47 years old, suffers from "severe" COPD, a condition which the Centers for Disease Control ("CDC") reports increases a person's risk of severe illness from COVID-19, and asthma, a condition which might increase a person's risk of severe illness from COVID-19.  CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 29, 2020)  Moreover, unlike at the time of the Court's May 26 decision (when the Court noted that "up until just days ago," FCI Terre Haute "had no

---

[4]  These developments also mitigate somewhat the concerns about Mr. Hill's recidivism risk discussed in the Court's May 26 decision.  (See May 26 Mem. Ord. at 3-4.)

reported COVID-19 cases" (May 26 Mem. Ord. at 3)), the BOP currently reports 48 inmates and 18 staff at FCI Terre Haute who are positive for COVID-19.  BOP, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited December 29, 2020).[5]  Hundreds more inmates have contracted and recovered from the disease.  Id.  Two inmates at FCI Terre Haute have died as a result of COVID-19 infection.  Id.  In light of this recent outbreak, multiple courts have granted compassionate release to inmates of FCI Terre Haute whose circumstances are similar to those of Mr. Hill.  See, e.g., United States v. Davis, No. 2:15-CR-19 (JMS) (CMM), 2020 WL 7138645, at *7 (S.D. Ind. Dec. 7, 2020) (Terre Haute Division) (granting motion for compassionate release brought by 37 year old inmate of FCI Terre Haute who had served more than half of his 120-month sentence for a non-violent narcotics offense, had completed a drug treatment program, and who the BOP had classified as "having a low risk of recidivism," in part because the inmate's obesity and status as a former smoker increased his risk of severe illness from COVID-19); United States v. Williams, No. 18-CR-30007 (SEM), 2020 WL 7312177, at *3 (C.D. Ill. Dec. 11, 2020) (granting motion for compassionate release brought by 52 year old inmate of FCI Terre Haute who had served less than half of his 120-month sentence for a narcotics and firearm offense, and who suffered from COPD and asthma, among other conditions elevating his risk of severe illness from COVID-19).

　　　　The Court appreciates that the number of positive cases at FCI Terre Haute has declined somewhat in recent weeks, and that it appears that FCI Terre Haute is taking the precaution of testing Mr. Hill for COVID-19.  (See Opp. Ex. A.)  Nonetheless, "[t]he nature of

---

[5]　　　Defendant's submissions cite the even larger number of inmates positive for COVID-19 at United States Penitentiary Terre Haute ("USP Terre Haute"), where the BOP reports the largest outbreak of COVID-19 of any BOP facility.  (Motion at 3-4; Reply at 1-2.) BOP records reflect that Mr. Hill is currently held at FCI Terre Haute, rather than at the adjacent USP Terre Haute.

prisons has made recommended social distancing difficult to achieve," United States v. Canini, No. 04-CR-283 (PAC), 2020 WL 4742910, at *2 (S.D.N.Y. June 8, 2020), and Mr. Hill represents that ten inmates in his dormitory, where "social distancing is impossible," have already contracted the virus.  (Motion at 6.)  Even assuming Mr. Hill is released to an RRC in March 2021, moreover, he would likely still face an increased risk of exposure to COVID-19 infection.  See United States v. White, No. 16-CR-82 (VEC), 2020 WL 6683076, at *2 (S.D.N.Y. Nov. 12, 2020) (acknowledging that the defendant "may face enhanced risk to COVID-19 at" an RRC because "halfway houses are uniquely positioned to be vectors for the virus, as residents arrive from different prisons and staff and residents come in and out throughout the day and night.") (internal quotation omitted).  Mr. Hill's plan upon his release, which involves his immediate relocation to (and a 14-day self-quarantine period at) his mother's residence in North Carolina, presents a comparatively lower risk of COVID-19 exposure for Mr. Hill.[6]

In light of the facts that Mr. Hill suffers from respiratory conditions that increase his risk of severe illness from COVID-19, that an outbreak of COVID-19 at FCI Terre Haute is ongoing, that Mr. Hill has served nearly 51 months in (and has less than nine months until his release from) BOP custody, that the BOP has designated him as having a "low risk recidivism level" and has approved his release to an RRC in March 2021, and that Mr. Hill has a re-entry plan that will afford him better opportunities to protect himself from the virus, the Court finds that extraordinary and compelling reasons warrant a reduction in Mr. Hill's custodial sentence to

---

[6]     Mr. Hill's plan for release to his mother's home, where he represents that he will have access to a separate bedroom and bathroom on the opposite side of the home from his mother's, is detailed at greater length in Mr. Hill's second motion for compassionate release, filed on May 6, 2020.  (See Docket Entry No. 382 at 31-32.)

time served.  In order to ensure a careful re-entry and promote protection of the public during

Mr. Hill's transition, the Court will impose an additional special supervised release period of six

months, during which Mr. Hill will be subject to home detention as well as the other conditions

originally set for his supervised release.  The special period of supervised release will be

followed by the supervised release period that was previously imposed.

<u>CONCLUSION</u>

For the reasons set forth above, Mr. Hill's renewed motion for compassionate

release pursuant to 18 U.S.C. section 3582(c)(1)(A) is granted.  Mr. Hill's sentence is hereby

shortened to time served plus whatever time is reasonably necessary to confirm that there is an

approved residence and make arrangements for him to travel to North Carolina safely.

Upon release, Mr. Hill shall serve an additional special period of six months of

supervised release, during which he will be subject to the special conditions set forth in the

judgment entered in this case on February 2, 2018 (Docket Entry No. 307, the "Judgment"), and

an additional special condition of six months of home detention.[7]  During the home detention

period, Mr. Hill may leave the approved residence only for work, medical treatment, and other

activities approved by the United States Probation Office for the Eastern District of North

Carolina.  Home detention is to be monitored by technology at the discretion of the probation

officer.  Following the completion of the special period of supervised release, Mr. Hill will

commence service of the five-year supervision period that was imposed on him by the Judgment,

subject to the special conditions set forth therein.

---

[7]     As contemplated in Mr. Hill's motions to the Court (<u>see</u>, <u>e.g.</u>, Docket Entry No. 382 at 1 n.1), Mr. Hill shall, once he arrives at the approved residence, spend the initial 14 days at home in self-quarantine.

An Order on Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)

will also be entered.  This Memorandum Order resolves Docket Entry Nos. 378, 410, and 415.

SO ORDERED.

Dated: New York, New York
　　　　December 29, 2020

　　　　　　　　　　　　　　　　　　　　　  /s/ Laura Taylor Swain　　　
　　　　　　　　　　　　　　　　　　　　　LAURA TAYLOR SWAIN
　　　　　　　　　　　　　　　　　　　　　United States District Judge